## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| KIMBERLY PATTERSON, | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No. 2:22-cv-1706 |
| | ) | |
| v. | ) | |
| | ) | |
| ALLEGHENY COUNTY REAL ESTATE | ) | |
| DIVISION, DEPARTMENT | ) | |
| OF PROPERTY ASSESSMENTS, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| *Defendants*. | ) | |
| | ) | |
| | ) | |

## COMPLAINT IN CIVIL ACTION

Kimberly Patterson (hereinafter, "Plaintiff"), by and through her undersigned counsel, The Workers' Rights Law Group, LLP, and specifically, Kyle H. Steenland, Esquire, files the within Complaint in Civil Action, averring as follows:

## PARTIES

1.     Plaintiff is an adult individual who currently resides at 725 Dunmore Street, Pittsburgh, Pennsylvania 15206.

2.     Defendant, Allegheny County Real Estate Division, Department of Property Assessments (hereinafter "Defendant"), is a governmental entity controlled and supervised by Allegheny County, which is a County of the Second Class in the Commonwealth of Pennsylvania. Defendant's business operations are located at 542 Forbes Avenue, Pittsburgh, Pennsylvania 15219.

## JURISDICTION AND VENUE

3.     This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff brings this lawsuit asserting violations of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments of 2008, 42 U.S.C. § 1201, *et seq.* (hereinafter, and collectively, the "ADA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (hereinafter, "Title VII").

4.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because Plaintiff alleges violations of the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951, *et seq.* (hereinafter, the "PHRA"),[1] and seeks to set aside Defendant's decision to terminate her employment on the ground that the decision constitutes arbitrary and capricious administrative action.

5.     Venue is proper in this Court as Plaintiff is a resident and citizen of Pennsylvania and a substantial part of the events or omissions giving rise to the claims averred herein occurred in Pittsburgh, Allegheny County, which is located within the geographical confines of the United States District Court for the Western District of Pennsylvania. Therefore, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

6.     With respect to the Title VII, ADA, and PHRA claims, Plaintiff has satisfied all procedural and administrative requirements set forth in 29 U.S.C. § 626, and 42 U.S.C. § 2000e-5 in that:

> a.  Plaintiff filed a timely administrative complaint on February 22, 2022, with the Equal Employment Opportunity Commission (hereinafter, "EEOC") alleging, among other things, that Defendant terminated her in violation of Title VII, the ADA, and the PHRA;

---

[1] Notably, Pennsylvania state courts interpret the applicable provisions of the PHRA in accord with their counterpart provisions in the ADA and Title VII.  See *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996); *Doe v. Triangle Doughnuts, LLC*, 472 F. Supp. 3d 115, 138 (E.D. Pa. 2020).

b. On September 8, 2022, Plaintiff received permission for the right to sue from the EEOC, wherein Plaintiff was afforded 90 days within which to timely file an action in federal or state court. With the filing of the instant Complaint, Plaintiff has further satisfied any procedural requirements.

## PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS

7.      In October 1999, Plaintiff commenced her employment with Defendant, valuing property for tax assessment purposes and was later promoted to the position of "Appraiser Supervisor," supervising a team of property tax assessors.

8.      In her role as Appraiser Supervisor, Plaintiff earned approximately $27.00 per hour.

9.      Plaintiff is an African American female who adheres to and practices the religion of Islam.

10.     Plaintiff is disabled under the ADA in that she is legally blind in her left eye and suffers from chronic rhinitis (hereinafter, and collectively, "Disabilities").

11.     Plaintiff's Disabilities substantially impaired all aspects of her major life activities including, but not limited to, physical locomotion, working, pursuing personal hobbies and fulfillment, breathing, eating, sleeping, and concentrating.

12.     In July 2020, Plaintiff tested positive for the COVID-19 virus and ultimately fully recovered from same.

13.     Because Plaintiff contracted the COVID-19 virus, and her Disability in the form of chronic rhinitis results in chronic sneezing and a congested, drippy nose, Plaintiff was subjected to a heightened risk of death or serious illness if she would again contract COVID-19.

14.     Because Plaintiff contracted the COVID-19 virus, and her Disability in the form of a legally blind left eye resulted from vascular degeneration, and Plaintiff's family has a medical history of developing blot clots, Plaintiff was subjected to a heightened risk of death or serious illness if she would again contract COVID-19.

15.     In early 2021, Plaintiff received a flu shot and became severely ill, manifesting symptoms that are commonly associated with the flu and the cold, such as fever, runny nose, and uncontrollable chills.

16.     In September 2021, Defendant implement a mandatory vaccination policy, devised by Executive Branch of Allegheny County, and sent Plaintiff a letter mandating that she receive two vaccination doses for the COVID-19 virus and provide documentation verifying the vaccinations by December 01, 2021, or be subject to immediate termination (hereinafter, the "Policy").

17.     The Policy contained a medical exemption and a religious exemption.

18.     On October 21, 2021, Plaintiff submitted documentation to Defendant, seeking a medical exemption.

19.     Plaintiff sought a medical exemption based on legitimate concerns as to what effect(s) the vaccinations would have on her Disabilities. Plaintiff also sought a medical exemption based on founded concerns as to what physical reactions she would have from the vaccinations given the prior, adverse consequences she experienced with a flu shot.

20.     On October 25, 2021, Plaintiff submitted documentation to Defendant, seeking a religious exemption.

21.     Plaintiff sought a religious exemption based on her sincerely held religious belief that the vaccinations are inconsistent with the basic tenants and fundamental ideals of the Nation of Islam, as taught and preached by Elijah Muhammad and Louis Farrakhan.

22.     More specifically, according to Plaintiff's faith in and practice of the Islamic religion, mRNA vaccines, such as the ones that the Policy mandated that Plaintiff receive, contain

dangerous propensities that manipulate the body on a cellular level in a manner that directly contradicts her religious belief that one should not inflict harm upon oneself.

23.     In January of 2022, because Plaintiff was required to undergo medical testing to invoke the medical exemption, Defendant granted her an extension to receive the vaccinations on or before January 19, 2022. Although Defendant granted Plaintiff an extension, Defendant forewarned that if Plaintiff did not receive the vaccinations by or on January 19, 2022, she would be terminated from employment.

24.     Notably, Plaintiff did not interact with coworkers physically or in-person, continuously maintained a safe distance away from her coworkers, *i.e.*, more than six (6) feet apart, always wore a face mask, and routinely used hand sanitizer throughout the day.

25.     Furthermore, Plaintiff had her own personal office that was physically separated from the offices of her coworkers. Plaintiff's office contained two (2) doors; both of which were completely or nearly closed for a vast majority of the time.

26.     Overall, during the workweek, Plaintiff did not interact face-to-face with members of the public because any correspondence or consultations that she had with members of the public occurred telephonically or virtually through interactive platforms such as Zoom.

27.     Moreover, Plaintiff received weekly testing for the COVID-19 virus and complied with every mandate issued by Defendant in the time period up to and including January 19, 2022.

28.     In October 2021, to ascertain whether it was medically feasible for her to receive the vaccinations, Plaintiff attempted to schedule an appointment with a physician who was an allergist, specializing in the diagnosis and treatment of asthma and other allergic diseases and reactions. However, Plaintiff was unable to schedule an appointment until the middle of January 2022.

29.     In November 2021, Defendant denied Plaintiff's application for a religious exception under the Policy.  In this regard, Defendant never provided Plaintiff with a reason for denying her application.

30.     On January 13, 2022, Plaintiff had an appointment with her primary care physician, (hereinafter, "PCP") who referred her to an allergist, Christine Rauscher, M.D. In his initial clinical assessment, as reflected in a medical note, the PCP stated that Plaintiff's "tolerability is low"; Plaintiff's has a medical history wherein her family members have suffered from blood clotting; Plaintiff needs diagnostic testing and time to obtain the results of such testing; and, until then, Plaintiff is unable to receive a COVID-19 vaccination shot.

31.     On or about January 13, 2022, Plaintiff submitted to Defendant all documentation related to her appointment with her PCP.

32.     On January 19, 2022, Plaintiff had an appointment with Dr. Rauscher and raised concerns about the potential negative effect(s) that the vaccinations could have on her Disabilities. Plaintiff further inquired into possible, adverse side effects such as blood clotting and myocarditis. During this visit, Dr. Rauscher provided Plaintiff with a diagnostic script to undergo RAST Allergen Testing.

33.     On January 19, 2022, Plaintiff submitted to Defendant all documentation related to her appointment with Dr. Rauscher.

34.     Although Defendant received the above-mentioned medical documentation from her PCP and Dr. Rauscher, and knew that Plaintiff was in the process of obtaining diagnostic testing with respect to the potential, adverse side-effect(s) that the vaccinations may have on her Disabilities and physical health, and was advised that, as a medical matter, she should not receive

a COVID-19 vaccination until the testing was completed, Defendant provided Plaintiff with a letter dated and delivered in-person on January 20, 2022.

35.     In the January 20, 2022, letter, Defendant instructed Plaintiff to obtain a first dose of a COVID-19 vaccination within five (5) days and provide Defendant with proof of the vaccination within 1 day or else she would be subject to termination.

36.      Shortly thereafter, by letter dated January 26, 2022, Defendant informed Plaintiff that her employment was terminated, effective immediately, because Plaintiff failed to comply with the Policy.

37.     In turn, Plaintiff instructed Defendant that, while she undergoes and awaits the diagnostic testing mentioned previously, she would use Ivermectin, Paxlovid, or other pharmacological antiviral medications to prevent contracting or transmitting the COVID-19 virus. Out of hand, Defendant denied Plaintiff's offer.

38.     In discharging Plaintiff from employment on January 26, 2022, Defendant implicitly denied Plaintiff's request for a medical exemption. In this regard, Defendant never provided Plaintiff with a reason for denying her application.

39.     Importantly, at the time Defendant terminated Plaintiff, she had not yet received the results of the RAST Allergen Testing and did not have the opportunity to have a follow up appointment with either Dr. Rauscher or her PCP. Consequently, Defendant never provided Plaintiff with the opportunity to receive the result of physician-ordered testing to verify if she would be able to tolerate the vaccinations or whether the vaccinations would have an adverse effect(s) on her Disabilities.

40.     Defendant never offered, or much less provided, Plaintiff with a religious workplace accommodation prior to her termination from employment on January 26, 2022.

41.     Defendant never offered, or much less provided, Plaintiff with a medical workplace accommodation prior to her termination from employment on January 26, 2022.

42.     On February 8, 2022, Plaintiff had a follow up appointment with Dr. Rauscher.  On that same date, Dr. Rauscher issued a medical note that recounted Plaintiff's then medical state and set forth "plans" to address certain areas (hereinafter, the "Note").

43.     In the Note, with respect to "vaccine counseling" and Plaintiff's Disabilities, particularly chronic rhinitis, Dr. Rauscher stated that Plaintiff "has had numerous adverse reactions which are not verified;" Dr. Rauscher counseled Plaintiff on the limited role of skin prick testing to tromethamine and PEG poly80 in that there was "no known false positive/negative rate for skin prick testing, including to tromethamine" and "no blood testing for ingredients to COVID vaccine"; Dr. Rauscher would order additional diagnostic testing to "check baseline tryptase" and ascertain whether Plaintiff was at risk for an "anaphylactic reaction;" and Dr. Rauscher would order additional diagnostic testing to check Plaintiff's "IgE to environmental allergies." Otherwise, Dr. Rauscher deferred any assessment with respect to Plaintiff's non-immediate vaccine reactions, such as blood clotting and myocarditis, to Plaintiff's PCP.

44.     Ultimately, the Note confirms that Plaintiff possessed a legitimate factual and medicinal basis for seeking a medical exemption and Defendant abruptly, blanketly, and arbitrarily denied Plaintiff's request to invoke a medical exemption.

## COUNT I
### FAILURE TO ACCOMMODATE RELIGIOUS BELIEFS
### IN VIOLATION OF TITLE VII AND THE PHRA
### 42 U.S.C. § 2000e, *et seq.*; 43 Pa. Cons. Stat. § 951, *et seq.*

45.     Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

46.     Title VII failure to accommodate claims are governed by a burden-shifting framework. *E.E.O.C. v. GEO Grp., Inc.*, 616 F.3d 265, 271 (3d Cir. 2010). To establish a *prima facie* case of religious discrimination, the employee must show: (1) she holds a sincere religious belief that conflicts with a job requirement; (2) she informed her employer of the conflict; and (3) she was disciplined for failing to comply with the conflicting requirement. *GEO Grp*, 616 F.3d at 271, citing *Webb v. City of Phila.*, 562 F.3d 256, 259 (3d Cir. 2009).

47.     "Applied to the relevant facts here, those elements would require a plaintiff to show (1) a sincere religious belief in conflict with the vaccine requirement; (2) that she informed [d]efendant[] of the conflict by filling out a religious exemption form, and (3) that she was discharged or disciplined for failing to comply with the requirement." *Beckerich v. St. Elizabeth Med. Ctr.*, 563 F. Supp. 3d 633, 642 (E.D. Ky. 2021).

48.     In addition, under 42 U.S.C. § 2000e(j), an employer must make reasonable accommodations for its employees' religious beliefs and practices unless doing so would create an "undue hardship" for the employer. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 319 (3d Cir. 2008).

49.     "There may well be situations in which the employer's failure to engage in an informal interactive process would constitute a failure to provide reasonable accommodation that amounts to a violation of [Title VII]." *Jacques v. Clean-Up Grp., Inc.*, 96 F.3d 506, 515 (1st Cir. 1996). See *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 317-18 (3d Cir. 1999).

50.     Plaintiff adheres to and actively practices, and has actively practiced for decades, the Islamic religion, which, for the reasons set forth above, are diametrically opposed to – and affirmatively condemn - the use of COVID-19 vaccinations as required under the Policy.

51.     In filing out the necessary documentation to seek a medical exemption, Plaintiff expressly informed Defendant that the Policy's COVID-19 vaccination requirements directly and irreconcilably conflicted with her religious beliefs.

52.     Nonetheless, and regardless of Plaintiff's sincerely held religious beliefs, Defendant terminated Plaintiff from employment because she did not comply with the vaccination requirements of the Policy.

53.     Moreover, Defendant failed to offer any religious accommodations to Plaintiff and failed to engage, in any manner whatsoever, in an interactive process with Plaintiff to discuss possible accommodations.

54.     Indeed, Defendant cursorily denied Plaintiff's request for a religious exemption without providing Plaintiff with any reason for its decision.

55.     As such, Defendant failed to consider Plaintiff's request for a religious exemption on an individualized basis and, consequently, denied Plaintiff's request solely on the basis that it invoked the belief structure of the Islamic religion.

56.     More importantly, Defendant could have reasonably accommodated Plaintiff by permitting her to continue her employment by utilizing the alternating workday schedule formerly in place and requiring Plaintiff to maintain the above-mentioned measures when she worked at Defendant's office – *e.g.*, weekly COVID-19 testing, social distancing, masking, sanitation and cleaning of office space, routine use of hand sanitizer, and a prescribed course of Paxlovid.

57.     This accommodation would have been reasonable because, as previously averred, Plaintiff had limited interaction with the public or her coworkers and was, in essence, quarantined in her own office during the days in which she worked at Defendant's office.

58.     Moreover, Defendant could have reasonably accommodated Plaintiff by permitting her to telework from her residence throughout the entire workweek.

59.     This accommodation would have been reasonable because, as mentioned above, Defendant previously permitted Plaintiff to telework; Plaintiff was able to perform the essential functions of her job when working from her residence; and there was no overriding business need for Plaintiff to be physically present in Defendant's office.

60.     On January 26, 2022, Defendant terminated Plaintiff from employment because she failed to comply with the Policy.

61.     Ultimately, because Defendant failed to provide Plaintiff with reasonable accommodations, Defendant perpetuated religious discrimination and, in so doing, contravened the protections afforded to Plaintiff under Title VII and the PHRA.

62.     Additionally, given the grave and disturbing nature of Defendant's conduct described hereinabove, it is evidence that Defendant displayed reckless indifference to Plaintiff's rights under Title VII and the PHRA.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

### COUNT II
### RETALIATORY DISCHARGE ON THE BASIS OF RELIGIOUS BELIEFS IN VIOLATION OF TITLE VII AND THE PHRA
### 42 U.S.C. § 2000e, *et seq.*; 43 Pa. Cons. Stat. § 951, *et seq.*

63.     Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

64.     "To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that (1) she engaged in protected activity, (2) the employer took a materially adverse action against her, and (3) there was a causal connection between the protected activity and the employer's

action." *LeBoon v. Lancaster Jewish Community Center Ass'n*, 503 F.3d 217, 231-32 (3d Cir. 2007).

65.     On October 25, 2021, Plaintiff submitted documentation to Defendant, seeking a religious exemption to the Policy's vaccination mandate, which is a protected activity for purposes of Title VII.

66.     In November 2021, Defendant denied Plaintiff's request for a religious exemption.

67.     As averred previously, Defendant failed to consider Plaintiff's religious exemption on an individualized basis, thus displaying religious hostility and animus towards Plaintiff's sincerely held religious belief in Islam.

68.     As discussed above, Defendant could have provided Plaintiff with reasonable accommodations, but entirely failed to engage in any interactive process with Plaintiff to discuss or otherwise explore accommodations, which further indicates Defendant's religious hostility and animus towards Plaintiff's sincerely held religious belief in Islam.

69.     Upon information and belief, Defendant granted other employees who were similarly situated to Plaintiff religious accommodations analogous to those set forth above and those employees adhered to and practiced the religion of Christianity.

70.     On January 26, 2022, Defendant terminated Plaintiff because she did not comply with the Policy's vaccination mandate and did not qualify for a religious exemption.

71.     If Plaintiff did not have a pending application seeking a medical exemption, Defendant would have discharged her from employment on December 1, 2022.

72.     Given the close temporal proximity that exists from the time Defendant denied Plaintiff's request for a religious accommodation to the time Defendant would have terminated Plaintiff's employment (less than a month), combined with Defendant's apparent hostility and

animus towards the religion of Islam, there is a strong causal connection between Plaintiff's request for a religious accommodation and her termination.

73.     Therefore, because Defendant terminated Plaintiff on the basis of her religious beliefs, Defendant flouted the commands and protections of - and Plaintiff's rights under – Title VII and the PHRA.

74.     Additionally, given the grave and disturbing nature of Defendant's conduct described hereinabove, it is evidence that Defendant displayed reckless indifference to Plaintiff's rights under Title VII and the PHRA.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

### COUNT III
### FAILURE TO ACCOMMODATE DISABILITIES IN VIOLATION OF THE ADA AND THE PHRA
### 42 U.S.C. § 1201, *et seq.*; 43 Pa. Cons. Stat. § 951, *et seq.*

75.     Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

76.     To plead a *prima facie* claim of failure to accommodate, a plaintiff must allege that (1) she was disabled and her employer knew it; (2) she requested an accommodation or assistance; (3) her employer did not make a good faith effort to assist; and (4) she could have been reasonably accommodated. *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 157 (3d Cir. 2017).

77.     "With specific respect to vaccination mandates, the Equal Employment Opportunity Commission has advised employers that the ADA does require employers to provide a process by which a disabled employee can seek a medical exemption to a COVID-19 vaccine requirement." *Beckerich*, 563 F. Supp. 3d at 640. "Thus, if an employer does not provide

reasonable accommodations to disabled employees, an employee has an actionable claim under the ADA." *Id.*

78.     As noted above, "[t]here may well be situations in which the employer's failure to engage in an informal interactive process would constitute a failure to provide reasonable accommodation that amounts to a violation of the ADA." *Jacques*, 96 F.3d at 515. See *Taylor*, 184 F.3d at 317-18.

79.     As alleged above, Plaintiff suffered from the Disabilities and is disabled for purposes of the ADA and the PHRA.

80.     On October 21, 2021, Plaintiff requested an accommodation on the basis of her Disabilities by submitting documentation to Defendant that requested a medical exemption to the vaccination mandate of the Policy.

81.     Defendant failed to offer any medical accommodations for Plaintiff's Disabilities and failed to engage, in any meaningful manner, in an interactive process with Plaintiff to discuss possible accommodations.

82.     Instead, as detailed within this Complaint, Defendant refused to provide Plaintiff with the time necessary to obtain medical documentation to support her request for a medical exemption.  In this regard, Defendant utterly ignored the note from Plaintiff's PCP stating that until certain diagnostic testing is completed, Plaintiff cannot receive a COVID-19 vaccination.

83.     In the meantime, Defendant could have reasonably accommodated Plaintiff by permitting her to continue her employment by utilizing the alternating workday schedule formerly in place and requiring Plaintiff to maintain the above-mentioned measures when she worked at Defendant's office – *e.g.*, weekly COVID-19 testing, social distancing, masking, sanitation and cleaning of office space, and routine use of hand sanitizer.

84.     This accommodation would have been reasonable because, as previously averred, Plaintiff had limited interaction with the public or her coworkers and was, in essence, quarantined in her own office during the days in which she worked at Defendant's office.

85.     Moreover, Defendant could have reasonably accommodated Plaintiff by permitting her to telework from her residence throughout the entire workweek.

86.     This accommodation would have been reasonable because, as mentioned above, Defendant permitted Plaintiff to telework every other workday; Plaintiff was able to perform the essential functions of her job when working from her residence; and there was no overriding business need for Plaintiff to be physically present in Defendant's office.

87.     On January 26, 2022, Defendant terminated Plaintiff from employment because she failed to comply with the Policy.

88.     Ultimately, because Defendant failed to provide Plaintiff with reasonable accommodations, Defendant perpetuated disability discrimination and, in so doing, contravened the protections afforded to Plaintiff under the ADA and the PHRA.

89.     Additionally, given the grave and disturbing nature of Defendant's conduct described hereinabove, it is evidence that Defendant displayed reckless indifference to Plaintiff's rights under the ADA and the PHRA.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT IV
## DISCRIMINATORY DISCHARGE ON THE BASIS OF DISABILITIES IN VIOLATION OF TITLE VII AND THE PHRA
## 42 U.S.C. § 2000e, *et seq.*; 43 Pa. Cons. Stat. § 951, *et seq.*

90.     Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

91.     "To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).

92.     On October 21, 2021, Plaintiff submitted documentation to Defendant, seeking a medical exemption on the basis of her Disabilities, which is a protected activity for purposes of the ADA and the PHRA.

93.     As alleged previously, Defendant received medical documentation from Plaintiff's PCP and Dr. Rauscher, explaining that Plaintiff is in the process of undergoing diagnostic testing and cannot receive a COVID-19 vaccination until the results from the diagnostic testing verify that the COVID-19 vaccinations would not have any adverse side-effects on her Disabilities.

94.     As averred above, Defendant could have provided Plaintiff with reasonable accommodations while she awaited the results of the diagnostic testing. However, Defendant never even offered Plaintiff an accommodation or otherwise engage in a good faith discussion with respect to other possible accommodations.

95.     Instead, Defendant terminated Plaintiff from employment on January 26, 2022.

96.     In so doing, Defendant acted capriciously and effectively cut short and denied Plaintiff's request for a medical exemption on the same day that it terminated Plaintiff without any factual basis or reasoning whatsoever.

97.      Given the same-day proximity that exists from the time Defendant, *de facto*, denied Plaintiff's request for a medical exemption and terminated her from employment, in conjunction with Defendant's explicit, deliberate indifference towards Plaintiff's Disabilities, there is a

compelling causal connection between Plaintiff's request for a medical exemption, due to her Disabilities, and her termination from employment.

98.     As such, because Defendant terminated Plaintiff on the basis of her status as a disabled individual, Defendant contravened the statutory rights that are accorded to Plaintiff pursuant to the ADA and the PHRA.

99.     Additionally, given the grave and disturbing nature of Defendant's conduct described hereinabove, it is evidence that Defendant displayed reckless indifference to Plaintiff's rights under Title VII and the PHRA.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**<u>COUNT V</u>**
**ARBITRARY AND CAPRICIOUS EXECUTIVE ADMINISTRATIVE ACTION**

100.     Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

101.     An executive action that is administrative and/or adjudicative in nature will be set aside if it is arbitrary and/or capricious.  *Cary v. Bureau of Professional and Occupational Affairs, State Board of Medicine*, 153 A.3d 1205, 1210 (Pa. Cmwlth. 2017).

102.     "[A]dministrative action is arbitrary and capricious where it is unsupportable on any rational basis because there is no evidence upon which the action may be logically based." *Id.* (internal citation omitted). "[I]n order for an agency to render a decision that is not arbitrary and capricious, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Id.* A decision is also arbitrary and/or capricious when it "[d]epend[s] on individual discretion" and

"involve[es] a determination made without consideration of or regard for facts, circumstances, fixed rules, or procedures."  Black's Law Dictionary (10th ed. 2014)

103.    In implementing the Policy and the religious and medical exemptions to the Policy, Defendant was acting in an administrative capacity, namely as an arm of the Executive Branch of Allegheny County, tasked with deciding, as an adjudicative matter, whether an individual qualified for a religious or medical exemption under the Policy.

104.    Although the Policy contained both a religious and medical exemption to its mandatory vaccination requirement, if either one was denied as the result of arbitrary and/or capricious decision-making, then that particular decision, or both, must be voided and Plaintiff reinstated to her position as Appraiser Supervisor.

105.    As averred above, Defendant arbitrarily denied Plaintiff's request for a religious exemption. Notably, Defendant failed to consider the request on an individualized basis, denounced Plaintiff's application without articulating any reason to support its denial, and did not consider the facts and circumstances of Plaintiff's Islamic religious belief in the same manner as the religion of Christianity.

106.    As previously alleged, Defendant capriciously denied Plaintiff's request for a medical exemption. Notably, Defendant never provided Plaintiff with a sufficient opportunity to invoke the exemption, was in possession of medical evidence that Plaintiff could not receive a COVID-19 vaccination until the results of diagnostic testing were obtained, denied Plaintiff's application without articulating a reason in support, and completely failed to consider the particular facts and circumstances of Plaintiff's basis for the exemption.

107.    Because Plaintiff's application for a religious exemption was meritorious on its face, there was no evidence or rational factual basis upon which Defendant had to deny the

application. Again, Defendant never provided Plaintiff with a reason for denying her application for a religious exemption.

108.    Because Plaintiff's application for a medical exemption, and corroborating documentation was meritorious on their face, there was no evidence or rational factual basis upon which Defendant had to deny the application. Again, Defendant never provided Plaintiff with a reason for denying her application for a medical exemption.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in her favor, and against Defendants and prays for relief as follows:

1.    Declare and find that Defendant committed one or more of the following acts:

    i.    Violated Title VII and/or the PHRA in failing to provide Plaintiff with reasonable accommodations;

    ii.    Violated Title VII and/or the PHRA in retaliatorily discharging Plaintiff for requesting reasonable accommodations;

    iii.    Violated the ADA and/or the PHRA in failing to provide Plaintiff with reasonable accommodations;

    iv.    Violated Title VII and/or the PHRA in retaliatorily discharging Plaintiff for requesting reasonable accommodations; and/or

    v.    Engaged in arbitrary and capricious decision making when it terminated Plaintiff from employment.

2.       Award compensatory damages, including but not limited to past and future pecuniary and non-pecuniary losses, including suffering, mental anguish, inconvenience, and loss of enjoyment of life;

3.       Award equitable relief in form of back pay and front pay;

4.       Award punitive damages sufficient to deter Defendant from future conduct;

5.       Award attorney's fees;

6.       Award pre-judgment and continuing interest as calculated by the Court; and/or

7.       Reinstate Plaintiff to her position as Appraiser Supervisor with accrued seniority.


**JURY TRIAL DEMANDED ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date: November 28, 2022                    By: _____

Kyle H. Steenland (Pa. I.D. No. 327786)

The Workers' Rights Law Group, LLP
Foster Plaza 10
680 Andersen Drive, Suite 230
Pittsburgh, PA 15220
Telephone: 412.910.9592
Facsimile: 412.910.7510
kyle@workersrightslawgroup.com

*Attorney for Plaintiff, Kimberly Patterson*

## **VERIFICATION**

I, Kimberley Patterson, have read the foregoing allegations in the foregoing Complaint in Civil Action and verify that the statements therein are correct to the best of my personal knowledge, information and/or belief.  I understand that this verification is made subject to the penalties of 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities, which provides that if I knowingly make false averments, I may be subject to criminal penalties.


Dated: 11/30/22

_____
Kimberly Patterson